UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AKIMA GURLEY,

                              Plaintiff,

            – against –

DAVID H. BERG & ASSOCIATES, A
PROFESSIONAL CORPORATION d/b/a
BERG & ANDROPHY, and JENNY KIM,

                              Defendants.

**<u>OPINION & ORDER</u>**

20 Civ. 9998 (ER)

<u>RAMOS, D.J.</u>:

        Akima Gurley filed this action on November 28, 2020 against Berg & Androphy

("B&A") and Jenny Kim, alleging that she experienced racial discrimination, a hostile work

environment, wrongful termination, and retaliation in violation of federal and state law.  Doc. 1.

        On March 18, 2021, Defendants filed a motion to dismiss the complaint pursuant to

F.R.C.P. 12(b)(6) for failure to state a claim.  Doc. 20.  For the reasons set forth below, the

motion to dismiss is GRANTED in part and DENIED in part.[1]

## I.      BACKGROUND

        The following facts are based on the allegations in the complaint, which the Court

accepts as true for purposes of the instant motion.  *See, e.g.*, *Koch v. Christie's Int'l PLC*, 699

F.3d 141, 145 (2d Cir. 2012).

        Gurley is an African American woman of Guyanese heritage who graduated from college

in 2015 with a Bachelor of Arts.  Doc. 1 ¶ 13.  She worked several administrative roles,

including working as a legal assistant at a New York law firm, before beginning her employment

---

[1] Defendants' request for oral argument, Doc. 27, is now denied as moot.

as a legal assistant with B&A at their New York office on November 6, 2017.  *Id.*  B&A is a law firm with offices in New York, Houston, Denver, Miami, and Washington, D.C.  *Id.* ¶ 11.  B&A has no Black attorneys, and their New York office had no Black employees other than Gurley during her time there.  *Id.* ¶¶ 11, 14.  Kim is an Asian woman[2] who manages B&A's New York office along with her husband, attorney Michael Fay, who is white.  *Id.* ¶ 12.

Once employed, Gurley experienced racial stereotypes and discrimination from various employees of B&A, which she describes as "a pattern of picking on her appearance, dress, and characteristics due to her being Black."  *Id.* ¶ 15.  In one instance in January 2018, office manager Betty Lam accused Gurley of being the source of a smell permeating the office, saying that her lotion, which was on her desk, was too strong.  *Id.* ¶ 16.  The lotion was shea butter hand cream; according to Gurley, shea butter is an ingredient used in many skincare products popular with African American consumers.  *Id.*  B&A offered to pay to buy her a different lotion.  *Id.*  In another instance, Gurley was the target of selective enforcement of the dress code policy when she was admonished by Lam for wearing sneakers despite the fact that another legal assistant, Lusia Lee, an Asian woman, also wore sneakers.  *Id.* ¶ 17.  Lam noted that Lee would be addressed separately.  *Id.*  Gurley also was assigned more manual labor, such as washing dishes and changing paper, than other legal assistants.  *Id.* ¶ 18.  She also alleges that she was paid less than similarly situated white or Asian employees.  *Id.* ¶ 19.

Further, Gurley was accused of submitting false transit expenses and was asked questions that were not asked of anyone else at B&A.  *Id.* ¶ 20.  Kim also accused Gurley of not being "polished."  *Id.* ¶ 21.  Lam responded by saying "I'm not sure what she means, you dress far better than [Lee] and I, and your hair is nice, well not today but some times!"  *Id.*  Gurley was

---

[2] The Court adopts the parties' terminology regarding racial identities.

wearing her hair that day in an afro, a natural hair style for African Americans. *Id.*  Gurley at times was also asked to text photos of the outfits she was wearing for approval. *Id.* ¶ 22.  She was also disproportionately reprimanded for being late, even if she was late due to picking up breakfast for Lam, her boss, and she did not receive credit for doing Lee's work if Lee arrived late. *Id.* ¶ 23.  When associate Christopher Deubert recommended that she become a notary, her supervisors dismissed the idea. *Id.* ¶ 24.

On February 21, 2019, Gurley wore her natural hair to work and found that Lee was sitting at her desk to greet guests in her place. *Id.* ¶ 25.  When she asked if it was because Kim thought she was "unpolished," she was told "not to take it personally." *Id.*  Gurley reported the incident the same day to the New York City Commission on Human Rights ("NYCCHR"), which days earlier had released guidance on hair discrimination. *Id.*  On March 1, 2019, Gurley was terminated. *Id.* ¶ 26.  On the day of her termination, Kim "brusquely brushed past" Gurley, making it clear "that she felt personal and discriminatory animus to [Gurley] and wanted to end all cordial behavior that day." *Id.* ¶ 27.

Gurley filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on approximately October 29, 2019. *Id.* ¶ 4.  She then requested a right to sue from the EEOC on approximately August 18, 2020, which the EEOC then issued on approximately August 31, 2020. *Id.* ¶ 5.

Her complaint alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*; § 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, and New York Labor Law ("NYLL") § 194.

## II.     LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Christie's Int'l PLC*, 699 F.3d at 145.  However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

## III.     DISCUSSION

### A.  Extrinsic Evidence

As an initial matter, the Court must decide how to address Gurley's new allegations submitted for the first time in her opposition to the instant motion.  Gurley provides new detail and evidence of the alleged discriminatory and hostile treatment she was subjected to in her brief in opposition and her accompanying declaration.  *See* Doc. 24 at 19–21; Doc. 25.

The Court will not convert this motion to a summary judgment motion.  *See B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 167 (S.D.N.Y. 1995) (declining to do so where the non-moving party offered the supplemental submissions).  Nor will

the Court consider Gurley's arguments raised for the first time in her opposition brief and declaration.  *See Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 56 (2d Cir. 2018) ("Ordinarily, parties may not amend the pleadings through motion papers.").

Lastly, the Court turns to the exhibits appended to Gurley's declaration.  Exhibit A is a letter Christopher Deubert, an attorney employed at the firm from July 2017 to November 2018, sent to the EEOC in support of Gurley's claim against B&A.  Doc. 25-1.  Exhibit B is an email Lam sent to Gurley on January 16, 2018 in which she says that "there's no sneakers allowed in the firm.  I know Lusia does it sometimes too, I'll address her separately."  Doc. 25-2.  Exhibit C consists of 11 pictures of Gurley that she states are "true and correct copies of the photos representing my general dress and appearance at work."  Doc. 25-3.  Exhibit D is an email chain between Gurley and Lam from September 26, 2018 in which Gurley asks about taking the notary exam and Lam responds "I will have to ask [Kim].  Currently there is not a need for you to be a notary."  Doc. 25-4.  Exhibit E is an email chain between Gurley and Lam from November 15, 2018 in which Lam reprimands Gurley for not setting out food and beverages prior to a 10 a.m. meeting.  Doc. 25-5.  Lam then apologizes after Gurley points out that the meeting was not scheduled to begin until 10:30 a.m.  *Id*.  Exhibit F is a January 22, 2019 email from Lam to Gurley in which she says "I will tell Jenny separately that you helped.  I don't mean to take your work but I also don't want to emphasize that [Lee] was late."  Doc. 25-6.  Exhibit G is a February 21, 2019 email from Gurley to Lam in which she asks why Kim "didn't want [her] sitting up front" and stating that she "was caught completely off guard when [she] came in . . . and [saw Lee] cleaning [her] desk off and moving [her] things to [Lee's] desk."  Doc. 25-7.  The email printout also contains various handwritten notes by Gurley related to this incident.  *Id.* Exhibit H is a printout of the NYCCHR's Legal Enforcement Guidance on Race Discrimination

on the Basis of Hair.  Doc. 25-8.  Lastly, Exhibit I contains emails from various B&A employees

on February 25, 2019 responding to emails Gurley sent asking for feedback on her work.  Doc.

25-9.

The Court will not consider Exhibits A, C, E, F, G, and I appended to Gurley's

declaration, as these documents are not referenced in a "clear, definite and substantial" way in

the complaint.  *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275

(S.D.N.Y. 2002).  The Court will consider Exhibits B, D, and H to be incorporated by reference,

as these communications and the NYC Commission on Human Rights guidance were explicitly

referenced in the complaint.

### B.  Title VII, Section 1981, and NYSHRL Racial Discrimination Claims

Count I against B&A alleges racial discrimination in violation of Title VII.  Doc. 1 ¶¶

28–39.  Count III against all Defendants alleges wrongful termination in violation of § 1981.  *Id.*

¶¶ 45–49.  Count V against all Defendants alleges race discrimination in violation of the

NYSHRL.  *Id.* ¶¶ 56–57.  "The pleading standards are generally the same for Title VII, § 1981,

and NYSHRL [discrimination] claims." *Cardwell v. Davis Polk & Wardwell LLP*, No. 19 Civ.

10256 (GHW), 2020 WL 6274826, at *16 (S.D.N.Y. Oct. 24, 2020).

"To defeat a motion to dismiss or a motion for judgment on the pleadings in a Title VII

discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action

against [her], and (2) [her] race, color, religion, sex, or national origin was a motivating factor in

the employment decision."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir.

2015); *see also Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) ("To survive a motion

to dismiss, a plaintiff need only [allege] a *prima facie* case of . . . discrimination by [alleging]

that (1) [she] was within [a] protected class; (2) [she] was qualified for the position; (3) [she] was

subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." (quotation and brackets omitted)).  At the pleading stage, the plaintiff need only "sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation."  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

"An inference of discrimination can arise from circumstances including . . . the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."  *Id.* at 312 (internal quotation marks and citation omitted).  However, a plaintiff must still plausibly allege that her protected characteristic was causally linked to the adverse employment action.  *See Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002).

Further, "while the central statutory purpose of Title VII was eradicating discrimination in employment, Title VII does not set forth a general civility code for the American workplace."  *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (internal quotation marks and citations omitted).  The same is true of § 1981, *see Morrison v. United Parcel Serv., Inc.*, No. 17 Civ. 2885 (WHP), 2019 WL 109401, at *4 (S.D.N.Y. Jan. 4, 2019) (citation omitted), and the NYSHRL, *see Heap v. CenturyLink, Inc.*, No. 18 Civ. 1220 (LAP), 2020 WL 1489801, at *11 (S.D.N.Y. Mar. 27, 2020) (citation omitted).

The parties only dispute whether there is an inference of discrimination.  Defendants argue that these claims should be dismissed because Gurley has not made allegations that support an inference of racial discrimination.  Doc. 21 at 17.  Specifically, they argue that Gurley's alleged disparate treatment compared to other coworkers is not supported by information about

her comparators' identities, experience levels, and conduct.  In support, they cite *Jones v. Bloomingdale's*, No. 17 Civ. 1974 (RA), 2018 WL 6067227, at \*5 (S.D.N.Y. Nov. 20, 2018), which dismissed claims in part because the plaintiff provided only conclusory statements, such as that the employer provided positive job references for white ex-employees but negative references for Black employees, or that other Black employees told him that Black employees were treated differently than white employees.  The other two cases Defendants cite, *Yan v. Ziba Mode Inc.*, No. 15 Civ. 47 (RJS), 2016 WL 1276456, at \*5 (S.D.N.Y. Mar. 29, 2016) and *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014), similarly dismissed claims because the plaintiffs also did not identify or describe comparator employees in their allegations.

In response, Gurley argues that her allegations are sufficient to support "a minimal inference of discriminatory motivation and it is not necessary at this stage for her to provide sufficient facts that would support the plausibility of the ultimate question of whether the adverse employment action was attributable to discrimination.  Doc. 24 at 13.  Specifically, she highlights Kim's comment about her not being "polished," Lam's comment about her hair not being "nice," and Lee replacing her at the client-facing desk when her hair was worn in a natural afro as evidence of discriminatory intent.  *Id.* at 14–15.  Two other circuits[3] and a court in this District have acknowledged the potential discriminatory intent behind comments regarding natural Black hair.  *See Rogers v. Am. Airlines, Inc.*, 527 F. Supp. 229, 232 (S.D.N.Y. 1981)

---

[3] *See Powers v. Sec'y, U.S. Homeland Sec.*, 846 F. App'x 754, 758 (11th Cir. 2021); *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 169 (7th Cir. 1976).

(suggesting that "banning a natural hairstyle [such as an afro] would implicate the policies underlying the prohibition of discrimination on the basis of immutable characteristics").

These individual comments and actions are not particularly egregious.  However, when coupled with Gurley's other allegations regarding the disparate enforcement of tardiness, transit expenses, and apparel policies against her as compared to Lee, an Asian woman who also was employed as a legal assistant, as well as the alleged pay disparities between Gurley and similarly situated white and Asian employees, these allegations are sufficient to meet the minimal burden under *Littlejohn.*  795 F.3d at 311.  Therefore, the Court will not dismiss the Title VII, § 1981, and the NYSHRL discrimination claims at this stage.  Further, because the NYCHRL's discrimination standards "are as or more generous to plaintiffs than those under the analogous federal statutes[,]"  *Estevez v. S & P Sales & Trucking LLC*, No. 17 Civ. 1733 (PAE), 2017 WL 5635933, at *3 (S.D.N.Y. Nov. 22, 2017), Defendants' motion to dismiss the NYCHRL discrimination claim is similarly denied.

### C.  Title VII, Section 1981, and NYSHRL Hostile Work Environment Claims

Count I against B&A alleges a hostile work environment in violation of Title VII.  Doc. 1 ¶¶ 28–39.  Count II against all Defendants alleges a hostile work environment in violation of § 1981.  *Id.* ¶¶ 40–44.  Count V against all Defendants alleges a hostile work environment in violation of the NYSHRL.  *Id.* ¶¶ 56–57.

To state a hostile work environment claim under Title VII, a plaintiff must allege that their workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Littlejohn*, 795 F.3d at 320–21.  A plaintiff "need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently

severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010). The Court must consider "the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse" to determine whether the "severe and pervasive" threshold is met. *Alfano*, 294 F.3d at 374. The plaintiff must also allege that a specific basis exists on which to impute that conduct to the employer. *See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62–63 (2d Cir. 1998). The same standard applies to hostile work environment claims under the NYSHRL, *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 310–11 (N.Y. 2004), and § 1981, *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 n.4 (2d Cir. 2014).

Defendants argue that these hostile work environment claims should be dismissed because Gurley has not sufficiently alleged a negative atmosphere of intimidation, comments, and insults related to race. Doc. 21 at 20. In support, Defendants cite several cases dismissing hostile work environment claims because employers' general negative comments, harsh tones, and even wrongful reprimands were insufficient to demonstrate a hostile work environment. *See, e.g.*, *Littlejohn*, 795 F.3d at 321; *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010).

As explained above, Gurley has sufficiently alleged that there may have been discriminatory intent in some of her employers' statements and actions leading up to her termination. While the allegations, if true, are undoubtedly harmful, the Court does not find that these allegations are sufficiently severe or pervasive to state a claim for a hostile work environment under Title VII, § 1981, or the NYSHRL. Gurley's allegations are more "episodic" than "continuous and concerted," *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 577 (2d

Cir. 1989), and courts in this Circuit have dismissed hostile work environment claims where there were more frequent and severe allegations than those in the case at hand. *See Littlejohn*, 795 F.3d at 321 (finding no hostile work environment despite negative comments, harsh tones, wrongful reprimands, and more); *Davis-Molinia v. Port Auth. of New York & New Jersey*, No. 08 Civ. 7584 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011), *aff'd*, 488 F. App'x 530 (2d Cir. 2012) (finding no hostile work environment despite the employer yelling at the plaintiff in front of staff, questioning overtime hours, avoiding the plaintiff, speaking rudely, and more). Further, Gurley's allegations are not comparable to cases she cites where a hostile work environment claim did survive a motion to dismiss. *See, e.g.*, *Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 990 (S.D.N.Y. 2017) (denying motion to dismiss on the basis of numerous racially charged statements and a pattern of yelling, screaming, cursing, and giving the silent treatment to the plaintiff).

Gurley's negative performance evaluations, the comments about her lotion and hair, and the scrutiny she received regarding her appearance and timeliness, among her other allegations, while upsetting, do not rise to the level of "permeat[ion] with discriminatory intimidation, ridicule, and insult[.]" *Littlejohn*, 795 F.3d at 320–21. Accordingly, Defendants' motion to dismiss the hostile work environment claims under Title VII, § 1981, and NYSHRL is granted.

### D.  NYCHRL Hostile Work Environment Claim

Count VI against all Defendants alleges a hostile work environment in violation of the NYCHRL § 8-101 *et seq*. Doc. 1 ¶¶ 68–79.

The standard to prevail on a hostile work environment claim under the NYCHRL is lower than the state and federal counterparts. *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011). One must show only "unequal treatment based upon membership in a

protected class." *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016) (citation omitted).  In other words, a plaintiff must show that she was "treated 'less well' because of discriminatory intent."  *Colon v. Fashion Inst. of Tech. (State Univ. of New York)*, 983 F. Supp. 2d 277, 292 (S.D.N.Y. 2013) (quoting *Mihalik v. Credit Agricole Cheuvreux N.Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).  In evaluating a hostile work environment claim, the court must again look at the "totality of the circumstances."  *Mihalik.*, 715 F.3d at 111. However, "petty, slight, or trivial inconveniences are not actionable."  *Bermudez*, 783 F. Supp. 2d at 579 (internal quotation marks and citation omitted).

While Gurley has not sufficiently plead the severe or pervasive conduct required to state a claim for hostile work environment under the federal and state statutes, at this stage she has stated claims to satisfy the more lenient pleading standards for a NYCHRL claim.  Specifically, she has alleged that she was paid less than other non-Black employees and that she was treated worse than Lee, a similarly situated Asian employee, in terms of how various policies were enforced against her.  "Such allegations are sufficient to state a claim, particularly after *Littlejohn*."  *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015) (denying motion to dismiss a NYCHRL hostile work environment claim after dismissing the Title VII and NYSHRL claims); *see also Syeed v. Bloomberg L.P.*, No. 20 Civ. 7464 (GHW), 2021 WL 4952486, at *18 (S.D.N.Y. Oct. 25, 2021) (denying motion to dismiss because of allegations that plaintiff was paid less than comparators for similar work and was denied resources that were provided to colleagues).  Accordingly, Defendants' motion to dismiss the NYCHRL hostile work environment claim is denied.

### E.  Retaliation Claims

Count IV against all Defendants alleges retaliation in violation of § 1981.  Doc. 1 ¶¶ 50–55.  Count VIII alleges retaliation in violation of Title VII against B&A and retaliation in violation of the NYSHRL and NYCHRL against all Defendants.  Doc. 1 ¶¶ 87–92.

A *prima facie* claim for retaliation under Title VII and the NYSHRL requires that a plaintiff establish "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316.  However, at the pleading stage, a plaintiff must only allege facts that provide plausible support to the *prima facie* requirements. *Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 581 (2d Cir. 2020).  To state a claim under the NYCHRL, a plaintiff must plausibly allege that "(1) [the plaintiff] participated in a protected activity known to defendants; (2) defendants took an action that disadvantaged [the plaintiff]; and (3) a causal connection exists between the protected activity and the adverse action." *Fletcher v. Dakota, Inc.*, 99 A.D.3d 43, 51–52 (N.Y. App. Div. 2012).

Gurley has alleged in the complaint that she reported Lam's comments regarding not being "polished" to the NYCCHR and was terminated "shortly after."  Doc. 1 ¶¶ 25–26.  She also alleges that she did complain to Defendants about what she believed to be racially discriminatory comments and conduct, in response to which Defendants retaliated against her in the form of further discrimination and harassment, refusing to reprimand her co-workers for the allegedly discriminatory behavior, and ultimately terminating her.  *Id.* ¶¶ 52–53.  She further alleges that Defendants were aware of her protected activities and took adverse employment actions against her.  *Id.* ¶¶ 89-90.

Defendants argue that the retaliation claims should be dismissed for failure to state a claim because Gurley does not allege that Defendants knew about her report to the NYCCHR and has not made allegations connecting her termination to that report.  Doc. 21 at 24–26.  They argue that the complaint has nothing more than conclusory allegations.  *Id.* at 26.  In response, Gurley argues that she has sufficiently alleged that she was retaliated against for her informal complaints to her employer regarding the racial discrimination she allegedly experienced, not the report to the NYCCHRL.  Doc. 24 at 21–22.

While it is true that informal complaints to an employer can constitute protected activity for purposes of a retaliation claim, the informal complaints must have put the employer on notice that discrimination was occurring.  *See Sherman v. Fivesky*, *LLC*, No. 19 Civ. 8015 (LJL), 2020 WL 2136227, at *15 (S.D.N.Y. May 5, 2020); *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).  Gurley points to three instances in which she argues that she put Defendants on notice regarding her allegedly discriminatory treatment.  First, after the incident in which Lee received credit for Gurley's work, Doc. 1 ¶ 23, she claims she had a conversation with Lam which led Lam to give her a gift of makeup as an apology.  Doc. 24 at 22. Second, Gurley alleges that she emailed Lam regarding Kim's comment about her not being "polished."  *Id.* at 23.  Third, she allegedly emailed Lam regarding Lee sitting at her desk during a meeting.  *Id.*

However, these allegations do not appear in the complaint, only in Gurley's declaration (see section A, *supra*).  Therefore, they cannot be considered in this motion to dismiss.  Even if they were to be considered however, these allegations do not make it clear that Gurley was alleging discriminatory treatment in particular.  While informal complaints do not need to use the word discrimination to put the employer on notice, they do need to suggest that the complained-

14

of activity is unlawfully discriminatory.  *See Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013).  Here, Gurley's comments and questions are similar to run-of-the-mill complaints about certain problems at work and are not sufficient to put Defendants on notice.  *See Galdieri-Ambrosini*, 136 F.3d at 292 (finding that "there was nothing in [plaintiff's] protests that could reasonably have led [the defendant] to understand that [gender discrimination] was the nature of her objections").

Defendants are therefore correct that the complaint contains no allegations suggesting that they were aware of Gurley's complaints regarding her alleged discriminatory treatment. They thus could not have retaliated against her because of those complaints, and her retaliation claims fail.  Accordingly, Defendants' motion to dismiss the retaliation claims is granted.

### F.  NYLL Section 194

Count VII against all Defendants alleges unequal pay in violation of NYLL § 194.  Doc. 1 ¶¶ 80–86.  Gurley concedes in her response to the motion at hand that her claim under this statute would not survive and therefore voluntarily agrees to its dismissal.  Doc. 24 at 24. Accordingly, Defendants' motion to dismiss this claim is granted.

### G.  Defendant Kim

Defendants also move to dismiss all remaining claims against Kim.  Doc. 21 at 28.  As the Court has now dismissed the § 1981 and NYSHRL hostile work environment claims, the NYSHRL and NYCHRL retaliation claims, and the NYLL § 194 claim, the only claims remaining against Kim are the discrimination claims under § 1981, NYSHRL, and NYCHRL, and the NYCHRL hostile work environment claim.

Individuals may be held liable under § 1981.  *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000).  To state a claim for individual liability, "a plaintiff must

demonstrate some affirmative link to causally connect the actor with the discriminatory action." *Id.* (internal quotation marks and citations omitted).  The individual defendant must be personally involved in the discriminatory activity.  *Id.*  Personal involvement can include direct participation as well as "gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring."  *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004); *see also Mazyck v. Metro. Transp. Auth.*, 893 F. Supp. 2d 574, 596 (S.D.N.Y. 2012).

The NYSHRL also permits individual liability.  *See Martin v. New York State*, No. 17 Civ. 9721 (DLC), 2019 WL 2053992, at *5 (S.D.N.Y. May 9, 2019), *aff'd sub nom. Martin v. New York*, 799 F. App'x 68 (2d Cir. 2020).  Section 296(6) of the NYSHRL states that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."  N.Y. Exec. Law § 296(6).  Based on this language, several courts in this Circuit have held that a defendant who actually participates in the conduct that gives rise to a discrimination claim pursuant to the NYSHRL may be held personally liable under the statute.  *See Martin*, 2019 WL 2053992, at *5; *see also Feingold v. New York*, 366 F.3d 138, 157–58 (2d Cir. 2004).  However, individual liability for discrimination claims under the NYSHRL is "limited to individuals with ownership interest or supervisors, who themselves[ ] have the authority to hire and fire employees." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 365–66 (S.D.N.Y. 2012).

"The NYCHRL provides a broader basis for direct individual liability than the NYSHRL," in that individual liability of an employee may be found "regardless of ownership or decisionmaking power."  *Malena*, 886 F. Supp. 2d at 366 (internal quotation marks and citations omitted).  Additionally, both the NYSHRL and NYCHRL provide for aider-and-abettor liability.

*Id.* at 367 (citing NYSHRL § 296(6) and NYCHRL § 8-107(6)).  Aider-and-abettor liability

under both statutes uses the same standard and requires showing that the defendant assisted

another party in violating the law and that the individual employee actually participated in the

conduct giving rise to the claim.  *Id* at 367–68; *see also Mauro v. New York City Dep't of Educ.*,

No. 19 Civ. 4372 (GBD) (KHP), 2020 WL 5899522, at *8 (S.D.N.Y. Apr. 29, 2020), *report and*

*recommendation adopted*, No. 19 Civ. 4372 (GBD) (KHP), 2020 WL 3869206 (S.D.N.Y. July 9,

2020).

The only allegations directly involving Kim are:  (1) that she accused Gurley of not being

polished on a day she wore her hair in an afro, Doc. 1 ¶ 21; and (2) that she "brusquely brushed

past" Gurley on the day of her termination, *id.* ¶ 27.

Based on these allegations, the Court must dismiss the NYSHRL discrimination claim

against Kim.  While Gurley alleges that Kim manages the office, she does not allege that Kim

had the power to hire and fire her.  Therefore, Gurley cannot establish individual liability as to

Kim as an "employer" under the NYSHRL.  *See Xiang v. Eagle Enterprises, LLC*, No. 19 Civ.

1752 (PAE), 2020 WL 248941, at *6 (S.D.N.Y. Jan. 16, 2020); *George v. Prof'l Disposables*

*Int'l, Inc.*, 221 F. Supp. 3d 428, 452 (S.D.N.Y. 2016).  Similarly, the Court dismisses the § 1981

discrimination claim against Kim, as her comment regarding Gurley's appearance "is not an

adverse action, and accordingly, cannot subject [her] to individual liability under [§ 1981]."

*Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 393 (S.D.N.Y. 2014).  Lastly, the NYCHRL

discrimination claim must also be dismissed because Gurley has not alleged that Kim

participated in her allegedly discriminatory firing.  *See Mitra v. State Bank of India*, No. 03 Civ.

6331 (DAB), 2005 WL 2143144, at *4 (S.D.N.Y. Sept. 6, 2005) (dismissing individual

NYCHRL claim due to lack of allegations that individual defendant actually participated in the

alleged discriminatory acts).  The Court must also dismiss aider-and-abettor discrimination

claims under the NYSHRL and NYCHRL against Kim, as there are no allegations that Kim

assisted another party in violating the law.

However, at this stage, the Court will not dismiss the NYCHRL hostile work

environment claim for direct liability against Kim.  Although the allegations against Kim are

neither numerous nor detailed, the allegation regarding the potentially discriminatory comment

regarding Gurley's appearance is sufficient to allege personal involvement in the alleged

disparate treatment of Gurley.  *Cf. Cid v. ASA Inst. of Bus. & Computer Tech., Inc.*, No. 12 Civ.

2947 (DLI) (VMS), 2013 WL 1193056, at *5 (E.D.N.Y. Mar. 22, 2013).  However, Gurley has

not stated a claim for aiding and abetting a hostile work environment under the NYCHRL, as she

has not alleged that Kim assisted another party in creating a hostile work environment in

violation of the NYCHRL.

### H.  Leave to Amend

Gurley has requested leave to amend her complaint in the event that Defendants' motion

not be dismissed in its entirety.  Doc. 24 at 28.  Federal Rule of Civil Procedure 15 instructs

courts to "freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P.

15(a)(2).  The Second Circuit has instructed courts not to dismiss a complaint "without granting

leave to amend at least once when a liberal reading of the complaint gives any indication that a

valid claim might be stated."  *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting

*Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).  In *Loreley Fin. (Jersey) No. 3*

*Ltd. v. Wells Fargo Sec., LLC*, the Second Circuit reaffirmed the "liberal spirit" of Rule 15 and

counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a

ruling" that highlights "the precise defects" of those claims.  797 F.3d 160, at 190–

91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (per curiam)).

Here, because this is the Court's first opportunity to highlight the precise defects of

Gurley's pleading and it is not yet apparent that another opportunity to amend would be futile,

the Court will permit her to replead the dismissed claims.

## IV.    CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED as to the hostile work

environment claims under Title VII, § 1981, and NYSHRL; the retaliation claims under Title

VII, § 1981, NYSHRL, and NYCHRL; the NYLL § 194 claim; and the individual § 1981,

NYSHRL, and NYCHRL discrimination claims against Kim.  The motion to dismiss is DENIED

as to the Title VII, § 1981, NYSHRL, and NYCHRL discrimination claims and the NYCHRL

hostile work environment claim.  Gurley may file an amended complaint, if at all, by March 2,

2022.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 20.

It is SO ORDERED.


Dated:    February 2, 2022
          New York, New York
                                              _____
                                                  Edgardo Ramos, U.S.D.J.